UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X   07 CV 2204 (NG)
MUHARREM BALKANLI,

        **Plaintiff,**

   -against-   **ORDER**

**CITY OF NEW YORK, a/k/a NYPD; MOTION
PICTURE ASSOCIATION OF AMERICA;
KEVIN ROONEY; NEIL BROSNAN; SGT.
ZADWADSKY; TIMES WEEKLY NEWSPAPER
a/k/a RIDGEWOOD TIMES NEWSPAPER;
MAUREEN WALTHERS, owner; and BILL
MITCHELL**

        **Defendants.**
-------------------------------------------------------------------X

**GERSHON, United States District Judge:**

*Pro se* plaintiff Muharrem Balkanli claims that defendants violated New York state law and deprived him of his federal constitutional rights in violation of 42 U.S.C. §§ 1982, 1983, and 1985. Specifically, Mr. Balkanli alleges that, in October 2005, officers of the New York City Police Department unlawfully entered and searched his place of employment, detained him using excessive force, committed various state law torts against him, and falsely arrested him. Mr. Balkanli admits that the raid at his place of employment—a video store in Sunnyside, Queens—was conducted pursuant to a search warrant, but claims that the search warrant was based on the fabricated affidavits of "Neil Brosnan and or John Segovia who [are] employed by Motion Picture Association of America." May 30, 2008 Declaration of Muharrem Balkanli, p. 3. Mr. Balkanli also appears to allege that defendants Times Weekly Newspaper a/k/a Ridgewood Times Newspaper ("Ridgewood Times"), Maureen Walthers, and Bill Mitchell defamed him by

1

publishing a newspaper account of the raid.[1]  All defendants now move to dismiss Mr. Balkanli's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## DISCUSSION

On a motion to dismiss, the allegations in the complaint are accepted as true.  *See Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998).  When considering a motion to dismiss, "the court is to look only to the allegations of the complaint and any documents attached to or incorporated by reference in the complaint . . . and to view all reasonable inferences that can be drawn from such allegations and documents in the light most favorable to the plaintiff."  *Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999) (internal quotations and citations omitted).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks, citations, and alterations omitted).  A plaintiff must assert "enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.  Nevertheless, a document filed *pro se* still must be "liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Boykin v. Keycorp*, 521 F.3d 202, 214 (2d Cir. 2008) (internal quotation marks omitted), *quoting Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (per curiam).  A court "must . . . interpret [*pro se* complaints] to raise the strongest

---

[1]  On page three of his complaint, Mr. Balkanli includes a copy of an article about the raid written by Bill Mitchell.  Mr. Balkanli then asserts in the next paragraph that he incurred "slanders to his title and was truly libeled by these defendants per se."

arguments that [they] suggest . . . ; [t]his is especially true when dealing with *pro se* complaints alleging civil rights violations." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 146 (2d Cir. 2002) (internal citations and quotations omitted).

I.  **Defendants Ridgewood Times, Maureen Walthers, and Bill Mitchell**

Apart from quoting an article that defendant Bill Mitchell wrote and alleging that defendants slandered and libeled him, Mr. Balkanli's complaint does not mention defendants Ridgewood Times, Maureen Walthers, and Bill Mitchell. These allegations fail to state a claim under 42 U.S.C. §§ 1982, 1983, and 1985. Mr. Balkanli has not alleged that defendants Ridgewood Times, Maureen Walthers, and Bill Mitchell engaged in "state action," as is required to state a claim under 42 U.S.C. § 1983. *Tancredi v. Metropolitan Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) ("A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action"). Nor has Mr. Balkanli alleged any facts to support a claim that defendants Ridgewood Times, Maureen Walthers, and Bill Mitchell conspired with others to deprive him of his Constitutional rights in violation of 42 U.S.C. § 1985. Nor does Mr. Balkanli's allegation of defamation against defendants Ridgewood Times, Maureen Walthers, and Bill Mitchell support a claim under 42 U.S.C. § 1982. *See* 42 U.S.C. § 1982 ("All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property").

In addition, to the extent that it asserts intentional infliction of emotional distress, libel, and slander claims under New York state law, Mr. Balkanli's complaint is untimely. Claims of intentional infliction of emotional distress, libel, and slander are subject to a one-year statute of limitations under New York law. *See* N.Y. C.P.L.R. § 215. Because Mr. Balkanli filed his

complaint on May 31, 2007, more than one year after the October 27, 2005 publication of the allegedly libelous article quoted in Mr. Balkanli's complaint, Mr. Balkanli's state law claims of intentional infliction of emotional distress, libel, and slander are untimely. Accordingly, Mr. Balkanli's claims against defendants Ridgewood Times, Maureen Walthers, and Bill Mitchell are dismissed in their entirety.[2]

## II.   Defendants NYC and Rooney

In support of their motion to dismiss Mr. Balkanli's complaint, defendants City of New York and Kevin Rooney ("City Defendants")[3] argue that: (1) there was probable cause to support defendants' search of plaintiff's place of employment and to arrest plaintiff; (2) the use of handcuffs to detain plaintiff during the search of the video store was proper and lawful; (3) even if the individual officers' actions violated plaintiff's constitutional rights, the officers'

---

[2] Plaintiff's lengthy complaint does not identify any other viable claims against defendants Ridgewood Times, Bill Mitchell, or Maureen Walthers under New York state law. Mr. Balkanli has not alleged negligent infliction of emotional distress and, based on the facts alleged in his complaint, would not be able to state such a claim against Ridgewood Times, Bill Mitchell, or Maureen Walthers. *See Jensen v. L.C. Whitford Co., Inc.*, 167 A.D.2d 826, 827 (4th Dept. 1990) (noting that, in general, recovery for a claim of negligent infliction of emotional distress "must be premised upon a breach of a duty owed directly to a plaintiff which either endangered plaintiff's physical safety or caused plaintiff to fear for his or her own safety"). Furthermore, although Mr. Balkanli has alleged "negligence" in his complaint, he has not alleged that defendants Ridgewood Times, Bill Mitchell, or Maureen Walthers owed him any duty. Moreover, because the only facts alleged against defendants Ridgewood Times, Bill Mitchell, or Maureen Walthers pertain to defamation, Mr. Balkanli would not be able to maintain a separate claim for negligence. *Como v. Riley*, 287 A.D.2d 416, 417 (1st Dept. 2001) ("since the facts alleged by plaintiff are inseparable from the tort of defamation, plaintiff may not recover on a negligence theory").

[3] In the City Defendants' brief in support of dismissal, the Corporation Counsel represents that "[u]pon information and belief, the person identified in the caption of the complaint as 'SGT. ZADWADSKY' is Michael Zadwydas." City Defendants' Br. in Support of Dismissal, p. 3, fn. 1. Plaintiff's claims against this defendant are dismissed for the same reasons, discussed below, that the court dismisses plaintiff's claims against the other City Defendants.

conduct is protected by qualified immunity; and (4) plaintiff has failed to establish the City of New York's liability pursuant to *Monell v. Department of Social Services,* 436 U.S. 658 (1978).

        A.      <u>Rule 56.2 notice and submission of extrinsic material</u>

In support of their argument that probable cause existed to search plaintiff's place of employment and to arrest plaintiff, the City Defendants have submitted a copy of the search warrant that New York City police officers obtained prior to conducting their search. Defendants also have submitted copies of the affidavits used to support their request for a search warrant, as well as a seizure inventory and a list of trademark infringing digital video discs ("DVDs") seized from plaintiff's place of employment.

Rule 12(d) of the Federal Rules of Civil Procedure provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d). "The essential inquiry is whether the appellant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052-53 (2d Cir. 1995) (internal quotations and citations omitted).

Although City Defendants describe their motion as a "motion to dismiss pursuant to F.R.C.P. 12(b)(6)," City Defendants, at the time that they served their motion on plaintiff on August 16, 2007, provided plaintiff with the following notice pursuant to Local Rule 56.2:

> PLEASE TAKE NOTICE that defendants City of New York and Kevin Rooney have moved to dismiss the Complaint pursuant to 12(b)(6) of the Federal Rules of Civil Procedure. This means that defendants have asked the Court to decide this case without a trial, based on written materials, submitted in support

5

of the motion.  **The claims that you assert in your Complaint may be dismissed without a trial if you do not respond to this motion by filing your own sworn affidavits or other papers as required by Rule 56(e).**  An affidavit is a sworn statement of fact based on personal knowledge that would be admissible in evidence at trial.  The full text of Rule 56 is attached.

In short, Rule 56 provides that you may NOT oppose the motion simply relying upon the allegations in your Complaint.  Rather, you must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising issues of fact for trial.  Any witness statements, which may include your own statements, must be in the form of affidavits.  You may submit affidavits that were prepared specifically in response to defendant's motion.

Any issue of fact that you wish to raise in opposition to the motion must be supported by affidavits or by other documentary evidence contradicting the facts asserted by the defendant.  If you do not respond to the motion on time with affidavits or documentary evidence contradicting the facts asserted by the defendant, the court may accept defendant's factual assertions as true.  Judgments may then be entered in defendant's favor without a trial.

In a notarized declaration dated May 30, 2008, plaintiff acknowledged receiving the City Defendants' Rule 56.2 Notice, *see* May 30, 2008 Declaration of Muharrem Balkanli, ¶ 19, and argued that the City Defendants' affidavits constituted impermissible hearsay. *Id.* at ¶ 9.  In addition, at the time that Mr. Balkanli filed his May 30, 2008 declaration, he also filed papers entitled "Plaintiff's Motion for Partial Summary Judgment."[4]

Because the City Defendants provided plaintiff notice pursuant to Rule 56, and because both parties have submitted extrinsic material in support of their arguments, the court will treat the City Defendants' motion as a motion for summary judgment. *See In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985), *cert. denied* 475 U.S. 1015 (1986).[5]

---

[4] Mindful of the directive to construe *pro se* submissions liberally, the court notified the parties by order dated June 12, 2008, that it would "construe plaintiff's submissions, filed May 30, 2008, as plaintiff's opposition to defendants' motion to dismiss."  The court further stated that, "[t]o the extent that plaintiff's May 30, 2008 submissions also can be construed as a motion for partial summary judgment, this motion will be held in abeyance pending resolution of defendants' motions to dismiss . . . ."

[5] In *Sahu v. Union Carbide Corp.*, 548 F.3d 59 (2d Cir. 2008), the Second Circuit found that plaintiffs received inadequate notice of the possibility that the district court would convert

B.  Summary Judgment Standard

Motions for summary judgment are granted if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995). The moving party must demonstrate the absence of any material factual issue genuinely in dispute. *Id.* The court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986). The party must produce specific facts sufficient to establish that there is a genuine factual issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

C.  Search of plaintiff's place of business

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause to issue a search warrant exists where "there is a fair probability that contraband or evidence of a crime will be

---

defendants' motion to dismiss into a motion for summary judgment. The present case is different. In *Sahu*, there were only "limited references" to extrinsic evidence in the parties' motion papers, *id.* at 67-68, and "plaintiffs had filed a multi-count complaint and the supporting memoranda and evidence [could] fairly be read to seek only dismissal under Rule 12(b)(6) on some counts and summary judgment on others." *Id.* at 69. Accordingly, "plaintiffs should have been made aware that all counts could or would be decided under the summary judgment standard in order to give them the opportunity to oppose the motion with evidence and a focused argument." *Id.* In the present case, defendants' Rule 56.2 notice did not indicate that it applied only to some of plaintiff's claims and not others; defendants relied extensively on extrinsic materials; plaintiff acknowledged receipt of defendants' Rule 56.2 notice and had opportunity to oppose the motion with evidence; and plaintiff *did* respond to defendants' motion by filing extrinsic material in the form of a notarized declaration and submitting his own motion for summary judgment.

found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed." *Id.* at 238-39 (internal quotation marks and citations omitted).

As noted earlier, in support of their argument that there was probable cause to search plaintiff's place of business, defendants have submitted a search warrant that they obtained prior to conducting their search of plaintiff's place of business, as well as affidavits that defendants submitted in support of their application for that search warrant. In addition, defendants have submitted a seizure inventory and a list of trademark infringing DVDs seized. The October 19, 2005 affidavit of defendant Police Officer Kevin Rooney, submitted in support of his application for a search warrant, states that "there is reasonable cause to believe that . . . [c]ounterfeit digital video discs (hereinafter DVDs) that contain unauthorized duplications of video recordings" may be found at "39-94 Queens Boulevard, Sunnyside, NY, a retail video store location, named 'U.S. Video'." Decl. of Gabriel Harvis, Ex. C. As a basis for his belief that counterfeit DVDs could be found at the named video store, Defendant Rooney stated in his affidavit that:

> Approximately three months ago, while on patrol with Sergeant David Porter . . . , we both observed a section of the store devoted to the sale of DVDs, which in our opinion appeared to be counterfeit in nature. At that time, Sergeant Porter decided that at a later date, we would conduct an undercover investigation in an effort to ascertain whether or not the DVD's offered for sale were legitimate, or as we suspected, counterfeit in nature.
> Therefore, in accordance with my Sergeant's instruction, I went to the subject location in an undercover capacity, and in civilian clothes, on October 14, 2005, and purchased one DVD of the movie "Blade Trinity" by New Line Home Entertainment for the sum of $8.69 in US currency . . . . I then removed the purchased DVD to the 108th precinct and vouchered the same under Property Clerk Invoice Number M809313.
> Thereafter, on October 18, 2005, I again entered the subject store in an undercover capacity and in plain civilian attire. At this juncture I went to the

> DVD section of the store and purchased two additional DVD movies, named "Exorcist The Beginning" by Warner Brothers and "Almost Famous," also by Warner Brothers. I . . . paid . . . the sum of $19.98 for the two movies. I then exited the store, and brought the DVD's to the 108th Precinct and vouchered them together under Invoice No. M809314.

In addition to defendant Rooney's affidavit in support of a search warrant, defendants have also submitted the October 19, 2005 supporting deposition of John Segovia, which states:

> I, John Segovia, have spoken to Police Officer Rooney regarding Digital Video Discs (DVD) seized from [U.S. Video] on or about 10/14/05. The title . . . Blade Trinity bear[s] a counterfeit trademark, to wit: an imitation of the registered trademark of New Line Cinema, which compan[y] I represent.
> I base my conclusions upon my experience and the formal training I have received as a member of the Motion Picture Association of America (MPAA). Specifically, the seized DVDs bear none of the indicia of legitimate digital video disc such as original artwork or security label attached to the packaging. Additionally, the seized DVDs display indicators that they are bogus, to wit: face label print is blurred, insert print is blurred, no studio logo is present or copied, inner ring bears no identifiable origination numbers (IFPI) (SID), the face labels are homemade and package artwork is photocopied.

In addition, defendants submit a second supporting deposition of John Segovia, also dated October 19, 2005, which states:

> I, John Segovia, have spoken to Police Officer Rooney regarding Digital Video Discs (DVD) seized from [U.S. Video] on or about 10/18/05. The title . . . The Exorcist bear[s] a counterfeit trademark, to wit: an imitation of the registered trademark of Warner Brothers, which compan[y] I represent.
> I base my conclusions upon my experience and the formal training I have received as a member of the Motion Picture Association of America (MPAA). Specifically, the seized DVDs bear none of the indicia of legitimate digital video disc such as original artwork or security label attached to the packaging. Additionally, the seized DVDs display indicators that they are bogus, to wit: face label print is blurred, insert print is blurred, no studio logo is present or copied, inner ring bears no identifiable origination numbers (IFPI) (SID), the face labels are homemade and package artwork is photocopied.

Based on the affidavit of Police Officer Kevin Rooney, which referenced the testimony of John Segovia, a search warrant was issued on October 19, 2005 at 6:45 p.m. by Judge Gerald of the

Criminal Court of the City of New York, County of Queens. Decl. of Gabriel Harvis, Ex. D.

Defendants have submitted a copy of this search warrant, which states:

> Proof by affidavit having been made this day before me by Police Officer Kevin Rooney, Shield No. 6778, of the 108th Precinct, that there is reasonable cause to believe that certain property, to wit: counterfeit digital video discs (hereinafter DVDs) that contain unauthorized duplications of video recordings, United States currency which constitutes the proceeds of illegal activity and any computers being used for unlawful reproduction of DVDs, and . . . business records in whatever form is located at the premises, to wit: 39-34 Queens Boulevard, Sunnyside, NY, a retail video store location, named "U.S. Video" . . . .
> YOU ARE THEREFORE COMMANDED between the hours of 6:00 a.m. and 9:00 p.m. to make an immediate search of the above-described premises and photograph and/or videotape the aforementioned premises . . . .
> AND IT IS FURTHER ORDERED, investigators from the MPAA will be permitted to assist in the execution of this warrant,
> AND, if you find such property and/or evidence, or any part thereof, to bring it and this warrant before this or another Court without unnecessary delay.

Finally, defendants have submitted an October 20, 2005 seizure inventory that lists over 100 DVDs, as well as approximately $100 in currency, that were seized from plaintiff's place of employment pursuant to the search warrant issued October 19, 2005. Decl. of Gabriel Harvis, Ex. F. With regard to DVDs seized on October 20, 2005, defendants have submitted the October 20, 2005 supporting deposition of Neil Brosnan, which states:

> I, Neil Brosnan, have spoken to Police Officer Kevin Rooney . . . regarding Digital Video Discs (DVD) seized from [Balkanli Muharrem] on or about October 20, 2005. The titles such as Big Fish, Miracle, Barber Shop 2, Starsky & Hutch bear a counterfeit trademark, to wit: an imitation of the registered trademark of Columbia, Buena Vista, MGM, Columbia, which companies I represent.
> I base my conclusions upon my experience and the formal training I have received as a member of the Motion Picture Association of America (MPAA). Specifically, the seized DVDs bear none of the indicia of legitimate digital video disc such as original artwork or security label attached to the packaging. Additionally, the seized DVDs display indicators that they are bogus, to wit: face label print is blurred, insert print is blurred, no studio logo is present or copied, inner ring bears no identifiable origination numbers (IFPI) (SID), the face labels are homemade and package artwork is photocopied.

Decl. of Gabriel Harvis, Ex. G.

In response to defendants' submissions, plaintiff argues that defendants' affidavits contain false testimony and that the search warrant and defendants' affidavits constitute inadmissible hearsay.[6] Plaintiff's broad and unsupported assertion that defendants' affidavits contain false testimony fails to raise an issue of material fact with regard to whether probable cause existed to search U.S. Video. Insofar as the materials submitted in support of the search warrant contain hearsay–and in large measure they are based on personal knowledge–there is no requirement that a search warrant be based exclusively on personal knowledge. In the face of plaintiff's conclusory allegations of falsity, defendants were not required to go beyond the supporting materials.

The Supreme Court has noted, in the context of a criminal case, that "there is . . . a presumption of validity with respect to the affidavit supporting the search warrant." *Franks v. Delaware*, 438 U.S. 154, 171 (1978); *see United States v. Klump*, 536 F.3d 113, 119 (2d Cir. 2008). Likewise, in the context of a civil case, the Second Circuit has noted that "[a] plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden." *Rivera v. United States*, 928 F.2d 592, 601-602, 604 (2d Cir. 1991) (applying aspects of the *Franks* standard in a civil case). A criminal defendant, for example, who seeks an evidentiary hearing to challenge the veracity of a search warrant affidavit must allege "deliberate falsehood or . . . reckless disregard for the truth, and those allegations must be accompanied by an offer of proof."

---

[6] In addition, plaintiff appears to argue that the warrant was improperly served because police executed the warrant and conducted their search even though "plaintiff demanded that [his] attorney be present." Plaintiff's Motion for Partial Summary Judgment at p. 5; Decl. of Muharrem Balkanli at ¶ 13 ("[p]laintiff declared the request for the attorney to be present and that City defendant to serve the search warrant to the designated agent or the attorney declared by the plaintiff but it was never served or left in the premises"). Plaintiff's argument is without merit because there is no legal requirement that plaintiff's attorney be present as a precondition to the valid execution of the search warrant.

*Franks v. Delaware*, 438 U.S. 154, 171 (1978). The "challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine . . . . they should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons." *Id.*

In light of the detailed materials which defendants submitted in support of their application for a search warrant, as well as affidavits and inventories which indicate that counterfeit DVDs were seized from U.S. Video on the date that the search warrant was executed, plaintiff's conclusory statement that defendants' affidavits were false is insufficient to raise an issue of material fact about whether there was probable cause to search. Plaintiff does not point specifically to the portion of the warrant that is claimed to be false, nor does plaintiff offer a plausible statement of reasons to support his assertion that the affidavits are false. In sum, the defendants have established that probable cause existed to search U.S. Video because of "a fair probability that contraband or evidence of a crime [would] be found [there]," *Gates*, 462 U.S. at 238, and plaintiff has failed to raise an issue of material fact in this regard. Accordingly, plaintiff's claim that defendants searched U.S. Video without probable cause in violation of the Fourth Amendment and 42 U.S.C. § 1983 is dismissed.

E. <u>Detention of plaintiff during the search</u>

Plaintiff further alleges that the City Defendants used excessive force against him in violation of his Fourth Amendment rights by detaining him in handcuffs at the time of the search. The Supreme Court has held that, "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Michigan v. Summers*, 452 U.S. 692, 705 (1981). However, the Second Circuit has held that, "[a]lthough handcuffing will be the reasonable

course in many, if not most arrest situations, we do not accept the principle that handcuffing is *per se* reasonable." *Soares v. State of Connecticut*, 8 F.3d 917, 921 (2d Cir. 1993). Instead of adopting a *per se* rule that would allow handcuffing in all arrest situations, the Second Circuit has noted that "[i]n determining whether the force used to effect a particular seizure is reasonable, a court must evaluate the particular circumstances of each case." *Id.* In the present case, plaintiff was detained in handcuffs while defendants, pursuant to a valid search warrant, conducted a search of plaintiff's place of employment, and plaintiff has not identified any circumstances that would indicate that his handcuffing was improper. Plaintiff does not claim that he was detained for an excessive period of time. Nor does plaintiff allege that he suffered any injury or physical discomfort from application of the handcuffs. Furthermore, even if the handcuffing of plaintiff during the search violated plaintiff's Constitutional rights, the individual officers who detained plaintiff are protected by qualified immunity because these defendants did not violate clearly established law. As the Second Circuit has noted, "[n]either the Supreme Court nor the Second Circuit has established that a person has the right not to be handcuffed in the course of a particular arrest, even if he does not resist or attempt to flee." *Soares*, 8 F.3d at 922. Accordingly, as in *Soares*, it is plain that defendants "did not violate plaintiff's 'clearly established' rights during his arrest," *id.*, and, therefore, that the individual City Defendants are entitled to qualified immunity and dismissal of plaintiff's claim.

      F.     <u>Plaintiff's Arrest</u>

Plaintiff's claim of false arrest, like his other claims against the City Defendants, also fails. Probable cause "constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under [42 U.S.C] § 1983." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citations and quotations omitted). Probable

cause exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (internal quotation marks omitted). In evaluating these matters, courts "consider the facts available to the officer at the time of arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997). Moreover, the validity of an arrest does not depend on an ultimate finding of guilt or innocence. *Pierson v. Ray*, 386 U.S. 547, 555 (1967). "Rather, the soundness of the arrest hinges on the existence of probable cause at the time the arrest was made." *Dukes v. City of New York*, 879 F. Supp. 335, 340 (S.D.N.Y. 1995). "The quanta of proof necessary to establish probable cause is only the probability, and not the prima facie showing, of criminal activity." *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993) (internal quotation marks omitted). "Once a police officer has a reasonable basis for believing that there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti*, 124 F.3d at 128 (citing *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979)).

In the present case, as discussed earlier and as reflected in the affidavit that defendant Rooney submitted in support of his application for a search warrant, defendant Rooney purchased DVDs from plaintiff's place of employment that, upon further investigation, were determined to be counterfeit. Defendant Rooney obtained a search warrant to search the "U.S. Video" store in Sunnyside and seized hundreds of DVDs upon execution of that search warrant. Some of these DVDs were later determined to be counterfeit. Plaintiff, at the time that the search warrant was executed, was present at the store where the counterfeit DVDs were being harbored. Although the record is unclear as to whether plaintiff was the proprietor, manager, or

a lesser employee of U.S. Video, plaintiff claims that he was vocal in protesting defendants' execution of the search warrant.[7] Under these circumstances, it was reasonable for defendants to treat plaintiff as a person responsible for engaging in trademark counterfeiting, a criminal offense. Plaintiff has failed to raise an issue of material fact in this regard. Accordingly, plaintiff's false arrest claim is hereby dismissed.[8]

### III. Defendants MPAA and Brosnan

Construing plaintiff's complaint and other submissions liberally, the unlawful conduct alleged against defendants MPAA and Brosnan appears to be limited to plaintiff's allegation that the MPAA and Brosnan knowingly fabricated false affidavits in connection with the search warrant that was obtained prior to the search of plaintiff's place of employment. These claims against defendants MPAA and Brosnan fail for the same reasons that plaintiff's claims against the City Defendants failed. *See* Discussion *infra* Part II.c. In light of the detailed affidavits and evidence submitted by defendants,[9] plaintiff's conclusory allegations of falsehood fail to raise an

---

[7] Plaintiff alleges in his complaint that he protested against defendants' search by stating: "Without rights being conveyed to me, and my attorney at law presence, which I must respectfully state that this is now turning into harassment and aggravation, becoming an unlawful arrest, illegal search and malicious imprisonment to which I will strongly urge you to discontinue and or you will be astonished by the Federal Action I will take against you and the City, for the violations you have just committed against me." Plaintiff's Complaint, ¶ 35.

[8] Because all of plaintiff's Section 1983 claims against individual city police officers have been dismissed, the court does not reach the issue of whether plaintiff has established Section 1983 liability against the City of New York pursuant to *Monell v. Dept. of Social Servs. Of City of New York*, 436 U.S. 658, 691 (1978). *See Oklahoma City v. Tuttle,* 471 U.S. 808, 824-25 (1985) ("[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker").

[9] Plaintiff acknowledged receiving Rule 56.2 Notice from defendants MPAA and Brosnan. *See* ¶ 22 of May 30, 2008 Balkanli Decl.

issue of material fact about the veracity of the affidavits that defendants MPAA and Brosnan submitted in connection with the search warrant.

**IV.     Remaining Claims**

To the extent that plaintiff's complaint raises additional state law claims, the court, having dismissed all of the possible federal claims raised in plaintiff's complaint, declines to exercise supplemental jurisdiction over those remaining state law claims. Finally, as the court has dismissed all of plaintiff's claims, plaintiff's motion for summary judgment—held in abeyance pending resolution of defendants' motions—is dismissed as moot.

## CONCLUSION

For the reasons stated above, plaintiff's complaint is dismissed in its entirety. The Clerk of Court is directed to enter judgment in favor of defendants and against plaintiff.

**SO ORDERED.**

/s/
**NINA GERSHON**
**United States District Judge**

Dated:    Brooklyn, New York
          May 14, 2009